# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

**In re:  303 West Arch Street, Madisonville, Kentucky
Hopkins County**

**UNITED STATES OF AMERICA**                                      **PLAINTIFF**

VS.                                              CASE NO.  4:19-CV-11-JHM

**LYSSA REINKE**                                              **DEFENDANTS**
303 West Arch Street
Madisonville, Kentucky 42431
Serve by: Hopkins County Sheriff

**CHRISTOPHER R. REINKE**
303 West Arch Street
Madisonville, Kentucky 42431
Serve by: Hopkins County Sheriff

## COMPLAINT

* * * * * *

The Plaintiff, United States of America, states as follows for its cause of action against the

Defendants, Lyssa Reinke ("Mrs. Reinke") and Christopher R. Reinke ("Mr. Reinke"):

1.       This real estate foreclosure action is brought by the United States of America, on

behalf of its Department of Agriculture, Rural Housing Service ("RHS") a/k/a Rural Development.

2.       This Court has original jurisdiction of this action under 28 U.S.C. § 1345.

3.       Venue is proper in this judicial district under 28 U.S.C. § 1391 because Mrs. Reinke

and Mr. Reinke reside in this judicial district, because a substantial part of the events giving rise

to this action occurred in this judicial district, and because the property at issue in this action is

situated in this judicial district.

1

4.      On or about August 14, 2015, Mrs. Reinke and Mr. Reinke, for value received, executed and delivered to RHS a promissory note ("the Note") in the principal amount of $89,900.00, bearing interest at the rate of 3.2500% per annum.  The Note required monthly payments of principal and interest.  A copy of the Note is attached hereto as Exhibit "A" and is hereby incorporated by reference as if set forth at length herein.

5.      Contemporaneously with their execution of the Note, Mrs. Reinke and Mr. Reinke executed, acknowledged and delivered to RHS a real estate mortgage ("the Mortgage"), which was recorded on August 17, 2015, in Mortgage Book 1135, Page 576, in the Commonwealth of Kentucky, Hopkins County Clerk's Office.  In and by the Mortgage, Mrs. Reinke and Mr. Reinke granted to RHS a first mortgage lien against the therein-described real property ("the Property") located in Hopkins County, Kentucky.  A copy of the Mortgage is attached hereto as Exhibit "B" and is hereby incorporated by reference as if set forth at length herein.

6.      Contemporaneously with their execution of the Note and the Mortgage, Mrs. Reinke and Mr. Reinke executed and delivered to RHS a Subsidy Repayment Agreement ("the Subsidy Agreement").  A copy of the Subsidy Agreement is attached hereto as Exhibit "C" and is hereby incorporated by reference as if set forth at length herein.

7.      The Property consists of a tract of land located in Hopkins County, Kentucky, which is more particularly described as follows:

<u>303 West Arch Street</u>
<u>Madisonville, Kentucky</u>

Beginning at a point on Arch Street 90 feet west of Josie Osburn's southeast corner, run thence West or nearly so, with Arch Street 108 feet to Walter G. Wright's southeast corner, thence North or nearly so, with said Wright's East line 265 feet, more or less, to a point 32 ½ feet southward from the center line of the Providence Branch of the L & N Railroad 108 feet to a stake, thence South or nearly so,

265 feet, more or less, with Josie Osburn's West line to the beginning.

There is excepted and excluded from this conveyance all of the minerals in and underlying the above described real estate which have been heretofore reserved or conveyed.

Being the same real property conveyed to Lyssa Reinke and her husband, Christopher R. Reinke, by deed of conveyance from John D. Stewart, Sr. and his wife, Nora J. Stewart, dated August 14, 2015, and of record in Deed Book 740, Page 199, Hopkins County Court Clerk's Office.

Parcel Number: M-21-39-14

8.     Mrs. and Mr. Reinke have failed and continue to fail to make payments in accordance with the terms and conditions of the Note and Mortgage, which are therefore in default.

9.     Paragraph 22 of the Mortgage provides that if a default occurs in the performance or discharge of any obligation of the Mortgage, then the United States of America, acting through RHS, shall have the right to accelerate and declare the entire amount of all unpaid principal together with all accrued and accruing interest to be immediately due and payable and to bring an action to enforce the Mortgage, including foreclosure of the lien thereof.  Because of the default under the terms of the Note and Mortgage as set forth above, RHS caused a Notice of Acceleration of Indebtedness and Demand for Payment to be issued declaring the entire indebtedness owed under the Note and Mortgage to be immediately due and payable.  However, such indebtedness has not been paid.

10.     Paragraph 1 of the Subsidy Agreement provides that a subsidy received in accordance with a loan under Section 502 of the Housing Act of 1949 is repayable to the government upon the disposition or non-occupancy of the security property.

11.     The Mortgage provides that upon any default thereunder RHS may recover its attorney's fees and costs incurred in the enforcement of the Note.

12.     The unpaid principal balance of the Note and the Mortgage is $86,190.12, with accrued interest of $3,238.62 through December 10, 2018, together with a total subsidy granted of $1,373.76, an escrow shortage of $899.49, late charges of $59.24, and fees assessed of $4,556.50, for a total unpaid balance of $96,317.73 as of December 10, 2018.  Interest is accruing on the unpaid principal balance at the rate of $8.0767 per day after December 11, 2018.  An Affidavit of Proof of Statement of Account signed by Rural Development foreclosure representative Vickie Jones is attached hereto as Exhibit "D" and is hereby incorporated by reference as if set forth at length herein.

13.     The Property is indivisible and cannot be divided without materially impairing its value or the value of RHS's mortgage lien thereon.

14.     The mortgage lien on the Property in favor of RHS is first, prior and superior to all other claims to, interests in and liens on the Property except for any liens which secure payment of ad valorem property taxes.

15.     There are no other individuals or entities known to RHS which purport to have a claim to, interest in or lien on the Property.

WHEREFORE, the United States of America, on behalf of RHS, demands as follows:

1.     That it be awarded a judgment against the interests of Mrs. Reinke and Mr. Reinke, jointly and severally, in the principal amount of $86,190.12, with accrued interest of $3,238.62 through December 10, 2018, together with a total subsidy granted of $1,373.76, an escrow shortage of $899.49, late charges of $59.24, and fees assessed of $4,556.50, for a total unpaid balance of $96,317.73 as of December 10, 2018, with interest accruing at the daily rate of $8.0767 from December 11, 2018, until the date of entry of judgment, and interest thereafter accruing according to law, plus costs, disbursements, attorney's fees and expenses.

2.       That RHS be adjudged to have a lien on the Property which is prior and superior to any and all other liens, claims, interests and demands, except for any liens for unpaid ad valorem property taxes; that the Property be sold free and clear of any and all claims to, interests in and liens on the Property held by all parties to this action except for real estate restrictions and easements of record and except for any liens which secure payment of city, state, county or school ad valorem taxes which may be due and payable at the time of sale; that the Property be sold free and clear of any right of redemption; and that the proceeds from the sale be first applied to the costs of this action, second to the debt, interest, costs and fees owed to RHS, with the balance remaining to be distributed to the parties as their claims, interests or liens may appear.

3.       That the Property be adjudged indivisible and be sold as a whole.

4.       That it be awarded any other lawful relief to which it may be properly entitled.


Respectfully submitted,

MORGAN POTTINGER MCGARVEY


/s/ Charles J. Otten
Charles J. Otten (KBA #97524)
401 S. Fourth Street, Ste. 1200
Louisville, KY 40202
Telephone: 502-560-6720
Facsimile:  859-560-6820
Email: cjo@mpmfirm.com
ATTORNEY FOR PLAINTIFF,
UNITED STATES OF AMERICA


**THIS COMMUNICATION FROM A DEBT COLLECTOR IS
AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE**


M:\Cases\USDA\131331- ReinkeLyssa&Christopher\Pleadings\Complaint.cjo.020619.docx

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Lyssa Reinke, Christopher R. Reinke |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Hopkins
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Charles J. Otten, Morgan Pottinger McGarvey
401 S. Fourth Street, Suite 1200, Louisville, KY 40202
502-589-2780

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
        Plaintiff

☐ 2  U.S. Government
        Defendant

☐ 3  Federal Question
        *(U.S. Government Not a Party)*

☐ 4  Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability    Product Liability |  |  | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel &    ☐ 367 Health Care/ |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander    Pharmaceutical Personal Injury |  | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability    ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation    ☐ 470 Racketeer Influenced and |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 340 Marine    ☐ 345 Marine Product Liability | **LABOR** | ☐ 840 Trademark | Corrupt Organizations    ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending | Relations | ☐ 862 Black Lung (923) | Exchange |
| ☐ 196 Franchise | Product Liability    ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
|  | ☐ 360 Other Personal    Property Damage | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
|  | Injury    ☐ 385 Property Damage | Leave Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
|  | ☐ 362 Personal Injury -    Product Liability | ☐ 790 Other Labor Litigation |  | ☐ 895 Freedom of Information |
|  | Medical Malpractice | ☐ 791 Employee Retirement |  | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure |
| ☒ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee |  | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate |  | 26 USC 7609 | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/    Sentence | **IMMIGRATION** |  | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | Accommodations    ☐ 530 General | ☐ 462 Naturalization Application |  | State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | ☐ 465 Other Immigration |  |  |
|  | Employment    **Other:** | Actions |  |  |
|  | ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other |  |  |  |
|  | Other    ☐ 550 Civil Rights |  |  |  |
|  | ☐ 448 Education    ☐ 555 Prison Condition |  |  |  |
|  | ☐ 560 Civil Detainee - |  |  |  |
|  | Conditions of |  |  |  |
|  | Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
      Proceeding

☐ 2 Removed from
      State Court

☐ 3 Remanded from
      Appellate Court

☐ 4 Reinstated or
      Reopened

☐ 5 Transferred from
      Another District
      *(specify)*

☐ 6 Multidistrict
      Litigation -
      Transfer

☐ 8 Multidistrict
      Litigation -
      Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1345

Brief description of cause:
Foreclosure of USDA Mortgage

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND:    ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____     DOCKET NUMBER _____

DATE          SIGNATURE OF ATTORNEY OF RECORD
02/06/2019    /s/ Charles J. Otten

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

Print        Save As...        Reset

JS 44 Reverse  (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

# EXHIBIT "A"
## Promissory Note dated August 14, 2015

Aug 18 2015 12:34:10   18557703756         ->         U.S. Department of A   Page 014

AUG 17 2015

Form RD 1940-16
(Rev. 7-05)

Form Approved
OMB No. 0575-0172

**UNITED STATES DEPARTMENT OF AGRICULTURE
RURAL HOUSING SERVICE**

### PROMISSORY NOTE

Type of Loan   SECTION 502

**SATISFIED**

Loan No. ....................................

This _____ day of _____ 20 _____
United States of America
By: ..........................................................
Title: ........................................................
USDA, Rural Housing Services

Date: ____08/14____ 20 _15_

303 West Arch St
_____
(Property Address)

Madisonville _____, Hopkins _____ KY _____
(City or Town)               (County)        (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ _89,900.00_ (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of ____3.2500____ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

   I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____, _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _396_ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $ _____, and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

   II. Payments shall not be deferred. I agree to pay principal and interest in ____396____ installments as indicated in the box below.

> I will pay principal and interest by making a payment every month.
> I will make my monthly payment on the _14th_ day of each month beginning on _September 14_ , _2015_ and continuing for _395_ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on _August 14_ , _2048_ , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
> My monthly payment will be $ _370.40_ , I will make my monthly payment at _the post office address noted on my billing statement_ _____ or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

1

LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of ___15___ days after the date it is due, I will pay a late charge. The amount of the charge will be _____4_____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Aug 18 2015 12:36:29   18557703756        ->        U.S. Department of A   Page 016

Account # 42390395

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA Rural Housing Service, c/o Customer Service Branch Post Office Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

_____ Seal        _____ Seal
Borrower Lyssa Reinke                  Borrower Christopher R Reinke

_____ Seal        _____ Seal
Borrower                                  Borrower

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| (1) $  |      | (8) $  |      | (15) $ |      |
| (2) $  |      | (9) $  |      | (16) $ |      |
| (3) $  |      | (10) $ |      | (17) $ |      |
| (4) $  |      | (11) $ |      | (18) $ |      |
| (5) $  |      | (12) $ |      | (19) $ |      |
| (6) $  |      | (13) $ |      | (20) $ |      |
| (7) $  |      | (14) $ |      | (21) $ |      |
| TOTAL  $ |    |        |      |        |      |

3

# EXHIBIT "B"
## Mortgage dated
## August 14, 2015

BOOK *1135* PAGE *576*

[Space Above This Line For Recording Data]

Form RD 3550-14 KY
(Rev. 12-05)

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on   14th day of August [Date] 2015
The mortgagor is                                                      ("Borrower").
        **Lyssa Reinke and her husband, Christopher R. Reinke**
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United
States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States
Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note")
which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and
payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| August 14, 2015 | $89,900.00 | August 14, 2048 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the
property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument
and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to
42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described
property located in the County of Hopkins
                                                                    , State of Kentucky

              See Attached Exhibit "A"

which has the address of            303 West Arch Street                         Madisonville,
                                            [Street]                              [City]
Kentucky    42431    [ZIP]      ("Property Address");

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a
valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete
this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching
existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

Page 1 of 6

*577*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Page 2 of 6

578

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

5.   **Hazard or Property Insurance.**   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance.   This insurance shall be maintained in the amounts and for the periods that Lender requires.   The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.   If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause.   Lender shall have the right to hold the policies and renewals.   If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.   In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.   Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened.   If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.   If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds.   Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due.   The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments.   If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.   **Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.**   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property.   Borrower shall maintain the improvements in good repair and make repairs required by Lender.   Borrower shall comply with all laws, ordinances, and regulations affecting the Property.   Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest.   Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest.   Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note.   If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.   If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7.   **Protection of Lender's Rights in the Property.**   If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.   Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs.   Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.   Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8.   **Refinancing.**   If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9.   **Inspection.**   Lender or its agent may make reasonable entries upon and inspections of the Property.   Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10.   **Condemnation.**   The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.   In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.   In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction:   (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market

Page 3 of 6

*579*

value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Page 4 of 6

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances:  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21.  **Cross Collateralization.**  Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:**

22. **SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

23.  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower.  At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

24.  Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower.  Borrower expressly waives the benefit of any such state law.  Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

25.  **Release.**  Upon termination of this mortgage, after payment in full, the mortgagee, at Borrower's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365

26.  **Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider     ☐ Planned Unit Development Rider  .   ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

_____ [SEAL]
(Borrower) Alyssa Reinke

_____ [SEAL]
(Borrower) Christopher R. Reinke

Page 5 of 6

STATE OF KENTUCKY            }
                             } ss :            ACKNOWLEDGMENT
COUNTY OF __HOPKINS__        }

Before me, __Michael D. Hallyburton_____, a Notary Public in and for the
County of __Hopkins_____, personally appeared _Lyssa Reinke and her husband, Christopher R
Reinke_ who acknowledged that ____they____ executed the foregoing instrument on the __14th__ day of
_August, 2015_ as the free act and deed.

WITNESS my hand and official seal this __14th__ day of __August__, 2015

[SEAL]

_____ Notary Public

My commission expires: _10-09-18_

## PREPARER'S STATEMENT

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and
the material in the blank spaces in the form was inserted by or under the direction of:

__Michael D. Hallyburton__
        (Name)
__54 South Main Street, Madisonville, KY  42431__        (Signature)
        (Address)

## RECORDER'S CERTIFICATE

STATE OF KENTUCKY            }
                             } ss :
COUNTY OF __HOPKINS__        }

I, __Keenan Chen_____, Clerk of the County Court for the County aforesaid, do certify that the
foregoing mortgage was on the __17__ day of __August__, 2015
lodged for record ____ at __4:05__ o'clock _A_ M., whereupon the same, with the foregoing and this certificate, have been duly
recorded in my office.

Given under my hand this __17__ day of __August__, 2015

_____        _____Keenan Chen_____
                               Clerk of Hopkins County Court
                               By __Don Ethridge_____, D.C.

Page 6 of 6

*582*

## EXHIBIT "A"

Beginning at a point on Arch Street 90 feet west of Josie Osburn's southeast corner, run thence West or nearly so, with Arch Street 108 feet to Walter G. Wright's southeast corner, thence North or nearly so, with said Wright's East line 265 feet, more or less, to a point 32 ½ feet southward from the center line of the Providence Branch of the L & N Railroad 108 feet to a stake, thence South or nearly so, 265 feet, more or less, with Josie Osburn's West line to the beginning.

There is excepted and excluded from this conveyance all of the minerals in and underlying the above described real estate which have been heretofore reserved or conveyed.

Being the same real property conveyed to Lyssa Reinke and her husband, Christopher R. Reinke, by deed of conveyance from John D. Stewart, Sr. and his wife, Nora J. Stewart, dated August 14, 2015, and of record in Deed Book *740*, Page *199*, Hopkins County Court Clerk's Office.

2015000069
HOPKINS CO, KY FEE $25.00
PRESENTED / LODGED 08-17-2015 10:35:23 AM

RECORDED: 08-17-2015
KEENAN CLOERN
CLERK
BY DONALD ETHRIDGE
DEEDS INDEXING

BK: MTG 1135
PG: 576-582

# EXHIBIT "C"

## Subsidy Repayment Agreement
## dated August 14, 2015

Aug 18 2015 12:45:24    18557703756         ->         U.S. Department of A   Page 025

AUG 17 2015

Form RD 3550-12       United States Department of Agriculture       Form Approved
(Rev. 05-12)                    Rural Housing Service              OMB No. 0575-0172

Account #

## SUBSIDY REPAYMENT AGREEMENT

Only one agreement should be executed by the subject borrower for the subject property.  The agreement is completed at the closing of the first Agency loan to the borrower regardless of whether or not they qualify for payment assistance at that time.

1. As required under section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with a loan under section 502 of the Housing Act of 1949 is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2. When the borrower transfers title or fails to occupy the home, recapture is due. This includes, but is not limited to, events of foreclosure and deeds in lieu of foreclosure. It the borrower refinances or otherwise pays in full without transfer of title and continues to occupy the property, the amount of recapture will be calculated, but payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until Government is paid in full. In situations where deferral of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement or in a timely manner after Agency notification to the borrower that recapture is due.

3. Amount of Recapture Due

a. Except as provided in paragraph 4, the amount of recapture due is the LESSER of either the amount of subsidy received, or the Portion of Value Appreciation subject to recapture as calculated under this paragraph.

b. The Portion of Value Appreciation subject to recapture is calculated as follows:

Current market value (see paragraph 3(c))

LESS

Original amount of prior liens and subordinate affordable housing products (see paragraph 3(d)),

Balance to be paid off on RHS loans (see paragraph 3(e)),

Reasonable settlement costs (see paragraph 3(f)),

According to the Paperwork Reduction Act of 1995, no person are required to respond to a collection of information unless it display a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Principal reduction at note rate (see paragraph 3 (g)),

Original equity (see paragraph 3 (h)), and

Capital improvements (see paragraph 3(i)).

EQUALS

Value appreciation (If this is a positive value, continue. If this is a negative value or "$0", there is no recapture due.)

TIMES

Percentage of outstanding balance of open loans, if applicable (see paragraph 3(j)),

Recapture percentage (see paragraph 3(k)), and

Return on borrower's original equity (see paragraph 3(l)).

EQUALS

Portion of value Appreciation subject to recapture.

c.    Current market value is the market value of the property at the time of the loan pay off; and is determined by an appraisal meeting Agency standards or an arm's length sales contract provided by the borrower upon Agency request.

d.    The original amount of prior liens and subordinate affordable housing products is the total of all liens against the property at the time the loan is approved.

e.    The balance to be paid off on RHS loans is the unpaid balance at the time of loan payoff, including principal, interest, fees, negative escrow, and protective advances.

f.    Reasonable settlement cost are those which are currently reasonable and customary in the area, and documented by a good faith estimate by the lender or an estimate provided by the closing agent.

g.    Principal reduction at note rate is the amount of RHS loan principal paid by the borrower to date. This does not include principal payments that are attributed to the payment assistance subsidy.

h.    Original equity is the market value of the property LESS prior liens, subordinate affordable housing products and Rural Housing Single Family Housing loans when the original RHS loan was made. Market value at the time of loan approval generally is the LESSER of the: (1) sales price, construction/rehabilitation cost, or total of these costs, whichever is applicable; OR (2) appraised value at the time of loan approval. For Self-Help loans, the market value is the appraised value as determined at the time of loan approval/obligation, which is subject to completion per plans and specifications. If the house is not ultimately finished under the Self-Help program, an amended agreement using the market value definition in this paragraph must be used. If the applicant owns the building site free and clear, or if an existing non-Agency debt on the site without a dwelling will not be refinanced with Agency funds, the market value at the time of loan approval will be the lower of the appraised value or the construction cost plus the value of the site.

Market value at the time of original loan approval for the property located at:

303 West Arch St

Madisonville, KY   42431                    $         89,900.00

LESS prior liens                            $ _____ Held by _____
                                            $ _____ Held by _____

LESS subordinate affordable housing products  $ _____ Held by _____
                                            $ _____ Held by _____

LESS Rural Development Single Family Housing Loans  $    89,900.00
EQUALS original equity (if negative number, use "0")  $     0.00

DIVIDE original equity by market value for
percentage of original equity                       0  %

i.   Capital improvements are additions made to the property after the RHS loan was made that add value above and beyond repairs necessary to maintain the property and keep it in good condition. The value of a capital improvement is determined by an appraisal, either obtained by the Agency or provided by the borrower upon Agency request, based on the change in the property's value attributable to the improvement. The cost of making the improvement will not be considered when making assessment.

j.   Percentage of outstanding balance of open loans applies if all loans are not subject to recapture, or if all loans subject to recapture are not being paid in full. To calculate the percentage of outstanding balance of open loans subject to recapture, divided the balance of RHS loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percentage of the outstanding balance of open loans being paid.

k.   Recapture percentage is determined by the number of months the oldest loan subject to recapture has been outstanding and the average subsidized interest rate paid over the years. For example, in the chart below, if the oldest loan subject to recapture has been outstanding for 70 months and the average interest rate paid is 2.5%, the recapture percentage is .50.

| months loan outstanding | Average interest rate paid | | | | | | |
|---|---|---|---|---|---|---|---|
| | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

l. Return on borrower's equity is the difference between 100 percent and the percentage of borrower's original equity.

4. Foreclosure and Deed in Lieu. In case of foreclosure or deed- in-lieu of foreclosure (voluntary conveyance) to the Government, the amount of recapture due shall equal the total amount of subsidy received. Such amount will be recoverable from the security property only, not as a personal liability of the borrower.

5. The Direct Single Family Housing Loan Program is administered under regulations at 7 C.F.R. part 3550. This agreement is subject to those regulations as well as any future amendments and successor regulations not inconsistent with this agreement.

Borrower agrees to pay recapture in accordance with this agreement.

| Borrower<br>Lyssa Reinke | _Lyssa Reinke_ | Date   08-14-2015 |
|---|---|---|
| Borrower<br>Christopher R Reinke | _Ch Ri_ | Date   08-14-2015 |

# EXHIBIT "D"
## Affidavit of Proof
## Statement of Account

**UNITED STATES DEPARTMENT OF AGRICULTURE
RURAL DEVELOPMENT**

**AFFIDAVIT OF PROOF STATEMENT OF ACCOUNT AS TO:**

Borrower's Name(s):                    **Lyssa Reinke/Christopher R. Reinke**
RD Loan Number(s):

**STATE OF MISSOURI
COUNTY OF ST LOUIS**

Personally appeared before me the undersigned authority, Vickie Jones, Foreclosure Representative, Rural Development (RD) who upon oath deposes and says that she is an employee of the United States Department of Agriculture, an agency of the United States of America, and further states as follows:

1.  That affiant is the RD Officer charged with legal custody of the accelerated RD loan file.

2.  That affiant has personally reviewed **Lyssa Reinke/Christopher R. Reinke** borrower Rural Development's accelerated RD loan account and file, and according to the records maintained and kept in this office, the borrower(s) as of **December 10, 2018**, owe(s) the unpaid balance of **$96,317.73** which includes principal, interest accrued to date and other pending fees and charges to the account as provided by the loan instruments and applicable law.  Interest continues to accrue at the rate of **$8.0767** per day as provided by the loan instruments.  The payment is due the **14th** of every month and is currently delinquent for **November 14, 2017** through **December 10, 2018.**

3.  The account is delinquent as of **December 10, 2018** in the amount of **$11,186.37.**

Breakdown of the unpaid balance:

| Loan Number | | **42390395** |
|---|---|---|
| Principal Balance | $ | 86,190.12 |
| Interest | $ | 3,238.62 |
| Total Subsidy Granted | $ | 1,373.76 |
| Escrow | $ | 899.49 |
| Late Charges | $ | 59.24 |
| Fees Assessed | $ | 4,556.50 |
| Appraisal Costs | $ | |
| Escrow Credits | $ | |
| **TOTAL** | $ | 96,317.73 |

Affiant has personal knowledge of the above-stated facts, is competent to testify to same, and declares that the foregoing is true and correct.

Vickie Jones
Foreclosure Representative
St. Louis, MO
Rural Development
United States Department of Agriculture

Sworn to and subscribed before me this **10th** day of December  2018.

Notary Public for Missouri
My commission Expires: 3/31/22

STACEY WIDMANN
Notary Public - Notary Seal
Jefferson County - State of Missouri
Commission Number 14435907
My Commission Expires Mar 31, 2022